**FILED**
**Aug 13, 2018**
**10:35 AM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS





# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **Anthony Frizzell,** | ) | **Docket No. 2018-06-0636** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Tin Roof Acquisition Co., LLC,** | ) | **State File No. 87883-2018** |
| **Employer,** | ) | |
| **And** | ) | |
| **ZNAT Insurance,** | ) | **Judge Kenneth M. Switzer** |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER

This case came before the Court on August 9, 2018, on Anthony Frizzell's Request for Expedited Hearing. The present issues are whether Mr. Frizzell's current need for surgery relates to the original work-related injury and whether he is entitled to temporary partial disability benefits. The Court holds that his present need for surgery is a direct and natural consequence of the original work-related injury and he is entitled to surgery. However, on the present record Mr. Frizzell did not satisfy his burden to show entitlement to temporary disability benefits.

### History of Claim

Mr. Frizzell worked as security manager for Tin Roof, a bar in downtown Nashville. On October 28, 2017, he injured his head, shoulders and neck at work during an altercation with several customers. Tin Roof did not offer any evidence or argument contesting the work-relatedness of the October 28 incident and Mr. Frizzell's resulting injuries.

Regarding his entitlement to temporary partial disability benefits, Mr. Frizzell received authorized care from Dr. Steven Strickland, a neurologist, for his head injury. According to Mr. Frizzell's affidavit, Dr. Strickland "recommended that I should only be allowed to work jobs that were light duty and not be exposed to hazardous situations." However, Mr. Frizzell did not introduce medical records documenting the treatment,

1

restrictions, or their duration. Mr. Frizzell testified that Dr. Strickland placed restrictions but he could not recall any specifics. In December, Tin Roof offered light-duty work checking IDs at the door, but Mr. Frizzell declined.

Later, Tin Roof offered a panel of orthopedists, and Mr. Frizzell chose Dr. Blake Garside for his shoulder injury. Dr. Garside performed surgery in early June 2018 described as a "right shoulder arthroscopy with debridement, SAD, and biceps tenodesis." During his recovery, Mr. Frizzell slipped in the shower on July 7 while reaching for a towel with his left hand. As he fell, he instinctively extended his right arm to balance himself and felt a sudden "pop."

Neither party introduced treatment records. Rather, the parties agreed to introduce only one set of notes from a post-op visit on July 11 and Dr. Garside's response to a letter from Tin Roof's counsel asking a limited causation question.

The notes from the follow-up visit stated that Mr. Frizzell reported slipping in the shower and he "grabbed instinctively" with his right arm to catch his fall, re-injuring the arm. Dr. Garside wrote that his exam findings that day were "consistent with [the] rupture/failure of his right biceps tenodesis. This likely occurred secondary to his fall in the shower on Saturday, July 7." The doctor recommended surgery to repair the injury.

The next day, Tin Roof sent Dr. Garside a letter asking about causation for Mr. Frizzell's right biceps rupture and its relationship to the work-related injury of October 28, 2017. The specific question appears in the letter as follows:

> In your expert medical opinion, due to the "increased pain complaints" and "obvious popeye deformity" noted by you on July 11, 2018, following a reported "slip in the shower" and acute pain complaints, and any and all other information you feel to be germane, did the work incident from October 28, 2017, contribute more than fifty percent (50%) in causing the right biceps rupture reported to you on July 11, 2018?

Below the question were blanks for the doctor to choose "yes" or "no." Dr. Garside selected neither and instead wrote "The current deformity & failure of the tenodesis is 2° to his slip/fall on 7/9/18."

**Findings of Fact and Conclusions of Law**

Mr. Frizzell need not prove every element of his claim by a preponderance of the evidence to obtain relief at an expedited hearing. Instead, he must present sufficient evidence that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Medical Benefits*

At the hearing Tin Roof did not dispute that Mr. Frizzell's injuries arose primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(14). Likewise, it did not dispute that the October 28 work injury caused the need for the original shoulder surgery. Tin Roof only questioned whether the re-injury and need for additional surgery related to the October 28 incident. In other words, is the rupture/failure of his right biceps tenodesis a direct and natural consequence from the initial injury, or did an independent, intervening cause lead to the need for surgery?

The Workers' Compensation Appeals Board adopted longstanding Tennessee law in *Lee v. W. Plastics*, 2016 TN Wrk. Comp. App. Bd. LEXIS 53 (Oct. 20, 2016), when it held that "in Tennessee, the general rule is that a subsequent injury, whether in the form of an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable injury." *Id.* at *6 (citation omitted). The rule provides that when the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment. *Id.* at *6-7. However, the rule has limits. Tennessee courts have consistently applied the principle that, in order for an employee's actions to constitute an independent, intervening incident sufficient to break the chain of causation, there must be *negligent, reckless, or intentional conduct on the part of the employee. Id.* at *10 (emphasis added).

Here, Tin Roof argued that "the recommended surgery and current right shoulder condition is not primarily related to the incident at issue." It relied on Dr. Garside's characterization that the need for surgery was "secondary to the slip and fall" in July 2018.

The Court disagrees. Considering Dr. Garside's statement in the context of both the July 11 treatment notes and the causation letter, he clearly believes the re-injury and need for surgery was the result of Mr. Frizzell's slip in the shower. However, this Court is unwilling to characterize a slip in the shower—a purely accidental occurrence while engaging in customary personal hygiene—as negligent, reckless or intentional conduct on Mr. Frizzell's behalf constituting an independent, intervening cause under the Workers' Compensation Law. Therefore, his resulting need for surgery to repair the re-injured

3

shoulder was a direct and natural consequence of the original, primary injury-producing event: the injuries Mr. Frizzell suffered breaking up a fight at work. The Court holds that Tin Roof must authorize the surgery and follow-up care.

*Temporary Disability Benefits*

Turning now to Mr. Frizzell's request for temporary partial disability benefits, an injured worker may be entitled to temporary partial disability benefits when the temporary disability resulting from a work-related injury is not total. *See* Tenn. Code Ann. § 50-6-207(1)-(2). Temporary restrictions assigned by physicians during an injured worker's medical treatment do not establish an entitlement to continued temporary disability benefits if the employee is able to work without loss of income. *Frye v. Vincent Printing Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 34, at *16 (Aug. 2, 2016).

Here, Tin Roof argued that Mr. Frizzell did not satisfy his burden regarding the existence of temporary restrictions assigned by Dr. Strickland. The Court agrees. The only proof of restrictions following the work incident is Mr. Frizzell's affidavit offering his lay recollection of alleged restrictions. Further, Mr. Frizzell was unable to elaborate on the restrictions in his testimony and he offered no proof as to the timeframe of these restrictions. As noted above, Mr. Frizzell must present sufficient evidence that he is likely to prevail at a hearing on the merits. On this record, the Court is unable to find the terms, extent or even the existence of Dr. Strickland's work restrictions and holds Mr. Frizzell is unlikely to prevail at a hearing on the merits regarding his entitlement to temporary partial disability benefits. Because this is an interlocutory order, Mr. Frizzell may gather additional evidence and renew his claim for temporary disability benefits at either another expedited hearing or the final compensation hearing.[1]

**IT IS, THEREFORE, ORDERED** as follows:

1. Tin Roof or its workers' compensation carrier must authorize the recommended surgery.

2. Mr. Frizzell's request for temporary partial disability benefits is denied at this time.

3. This matter is set for a Scheduling Hearing on **October 8, 2018, at 9:00 a.m. Central.** The parties must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Hearing. Failure to call may result in a determination of the issues without the parties' participation.

---

[1] The parties offered extensive testimony and argument about the nature of Mr. Frizzell's work duties before the work incident, a proposed light-duty accommodation, and whether he acted reasonably in declining to return to work in the light-duty position. Given the ruling regarding the lack of proof of restrictions, the Court need not address these arguments at this time.

4. Unless interlocutory appeal of the expedited hearing order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED August 13, 2018.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Mr. Frizzell's Affidavit
2. Wage statement
3. Choice of Physician form
4. Affidavit of Kristin Washington
5. Affidavit of Ryan Janse Van Rensburge
6. Medical records: Dr. Garside

Technical Record:
1. Petition for Benefit Determination, March 22, 2018
2. Petition for Benefit Determination, April 5, 2018
3. Employee's Pre-Mediation Position Statement
4. Dispute Certification Notice
5. Request for Expedited Hearing
6. Employer's Witness and Exhibit List
7. Employer's Response to Request for Expedited Hearing

## CERTIFICATE OF SERVICE

I certify that a copy of the Expedited Hearing Order was sent to these recipients by the following methods of service on August 13, 2018.

| Name | Certified Mail | First Class Mail | Email | Service sent to: |
|---|---|---|---|---|
| Cole Rogers, Employee's attorney | | | X | crogers@rogerslawtn.com |
| Connor Sestak, Employer's attorney | | | X | csestak@morganakins.com; plunny@morganakins.com |

Penny Shrum, Clerk of Court
WC.CourtClerk@tn.gov

6



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**Filed Date Stamp Here**

**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

RFA #: _____

Date of Injury: _____

SSN: _____

_____
**Employee**

_____
**Employer and Carrier**

**Notice**

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

**Statement of the Issues**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

**Additional Information**
**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

**List of Parties**
**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____  SF#: _____  DOI: _____

## Appellee(s)

**Appellee (Opposing Party):** _____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the _____ day of _____, 20___.

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____ , having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____     Relationship: _____

_____     Relationship: _____

_____     Relationship: _____

_____     Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                                                RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

| Groceries | $ _____ per month | Telephone | $ _____ per month |
| Electricity | $ _____ per month | School Supplies $ _____ per month |
| Water | $ _____ per month | Clothing | $ _____ per month |
| Gas | $ _____ per month | Child Care | $ _____ per month |
| Transportation | $ _____ per month | Child Support | $ _____ per month |
| Car | $ _____ per month | | |
| Other | $ _____ per month (describe: _____ ) | | |

10. Assets:

Automobile    $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House    $ _____    (FMV) _____

Other    $ _____    Describe:_____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____